# EMPLOYMENT AGREEMENT
## INCLUDING CONFIDENTIALITY, NON-COMPETITION AND NON-SOLICITATION PROVISIONS

This Employment Agreement Including Confidentiality, Non-Competition and Non-Solicitation Provisions (this "Agreement") is hereby made and entered into by and between CHG Healthcare Services, Inc., and all of its parent, subsidiary, and affiliated corporations, companies, and business entities, including but not limited to CHG Companies, Inc., CHG Medical Staffing, Inc., CHG Management, Inc., CompHealth Associates, Inc. and Weatherby Locums, Inc. (collectively, the "Company"), and Rachel Shafer ("Employee"), on July 26, 2012 (the "Effective Date").

## RECITALS

WHEREAS, the Company is engaged in the business of recruiting, staffing and placing healthcare and healthcare-related personnel, including, without limitation, physicians, nurses, pharmacists and allied healthcare professionals of all specialties and other staffing candidates (collectively, "Healthcare Personnel"), for positions with healthcare institutions, medical practices, clinics, hospitals, healthcare businesses, retailers, and other businesses, customers or clients (collectively, "Clients") on a permanent and/or temporary basis (collectively, with any future business the Company conducts, the "Business");

WHEREAS, the Company has developed and acquired and will continue to develop and acquire, at great cost and expense, Confidential Business Information (as defined below), to which Employee, in the course of employment with the Company, will have access;

WHEREAS, the Confidential Business Information is critical to the effective and successful conduct of the Business and the Company's goodwill, and derives independent economic value from not being generally known and readily ascertainable;

WHEREAS, great loss and damage would be sustained by the Company if, during the term of this Agreement or following its termination, Employee were to make any of the Confidential Business Information available to other persons or entities engaged in competition with the Company or use the same in competition with the Company;

WHEREAS, the Company desires to protect its goodwill, its investment in the education and training of Employee, its Client and Healthcare Personnel relationships, its present and future Confidential Business Information and its competitive advantage and present and future business prospects; and

WHEREAS, Employee desires to be employed by the Company on an at-will basis, and the Company is willing to employ and train Employee only upon the terms, conditions and restrictions set forth herein, and the parties desire to define the duties, responsibilities, covenants, and restrictions of each of the parties hereto.

**AGREEMENT**

NOW THEREFORE, in consideration of the promises and the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, the parties hereby agree as follows:

**1.**     **Exclusive Employment; Duties; Compensation.**

**(a)**     The Company hereby agrees to employ Employee as an at-will employee pursuant to the terms and conditions set forth herein, and Employee agrees to become so employed by the Company. Employee agrees to devote Employee's exclusive business time, attention and skill to the business of the Company. Employee agrees not to accept any other employment that would conflict with the performance of the duties prescribed by the Company while this Agreement is in effect, except with the prior written consent of the Company. Employee's compensation hereunder shall be determined from time to time by the Company and in the Company's sole discretion. Employee shall be entitled to participate in those employee benefit plans and other benefits and incentives as the Company shall determine in its sole discretion.

**(b)**     Employee shall, at all times and to the best of Employee's ability, experience and talent, perform all duties and render all services that may be required of and from Employee pursuant to the terms hereof or as may be directed from time to time by Employee's superior employees. Such duties shall be rendered at such places and times as the Company shall in good faith require or as the interests, needs, business and opportunities of the Company shall require or make advisable.

**2.**     **Confidential Business Information.** "Confidential Business Information" shall mean, individually and collectively, any and all trade secrets and other confidential and proprietary information of the Company (including confidential and proprietary information of a third party in the possession of the Company), whether in oral, written, electronic or other form, and whether or not legended or otherwise identified as Confidential Business Information, including, without limitation, information relating to current, former and prospective Clients (including, without limitation, names, addresses, telephone numbers, email addresses, mailing lists, contact persons, records of Client usage, preferences, requirements, job openings and staffing needs, rates, fees and compensation information, licensing and credentialing information and requirements, contract terms, and prospects), current, former and prospective Healthcare Personnel (including, without limitation, names, addresses, telephone numbers, email addresses, mailing lists, other personal and contact information, records of Healthcare Personnel staffing history, preferences, and requirements, licensing and credentialing information and requirements, rates, fees, benefits, and compensation information, contract terms, and prospects), methods and types of recruitment and placement services, methods of service preferred by Clients and Healthcare Personnel, sales and marketing information, methods and programs (including, without limitation, sales and marketing data, promotional strategies and programs, advertising plans, market research and analyses, and sales techniques), leadership, training, coaching and employee development programs and methods, documents, agreements, contracts and other arrangements, employee, independent contractor and consultant information (including, without limitation, compensation and benefits information, terms and conditions of employment or engagement, and performance reviews and evaluations), matters of internal organization, plans, policies, procedures, manners of operation, customized software, computer and management

information systems, passwords, manuals, trade secrets, know-how and other intellectual property, business plans and forecasts, financial statements, budgets, financial reports and analyses, accounting and statistical data, other financial information relating to the business of the Company, and other confidential and proprietary information of the Company.

### 3.    Assignment of Certain Rights.

**(a)**    "Invention" means any and all inventions; innovations; discoveries; improvements; designs; works of authorship; derivative works; processes; computer software and related information; patent applications; databases; mask works; trade secrets; know-how; technology; copyrights; trademarks, trade dress, trade names, or service marks; Website ideas and plans, including but not limited to look and feel; and other intellectual property or proprietary information rights, whether tangible or intangible, or any part of or modification, renewal, extension, continuation, registration or existing or future rights with respect to the foregoing (whether or not reduced to practice, patentable, or registrable under trademark, copyright or similar laws). "Employee Invention" means any and all Inventions that are: conceived, developed, authored, invented, reduced to practice, or otherwise created by Employee, either alone or jointly with others, (i) as a result of any work, services or duties performed by Employee for the Company or otherwise within the scope of Employee's employment, (ii) on the Company's time, and/or (iii) with the aid, assistance, or use of any of the Company's property, equipment, facilities, supplies, resources, or Confidential Business Information.

**(b)**    Employee hereby irrevocably grants, conveys, and assigns to the Company all right, title, and interest in and to any and all Employee Inventions. Employee hereby forever waives and agrees never to assert any rights that Employee may have in or regarding any Employee Invention, even after termination of Employee's employment with the Company for any reason. Employee further agrees that all works of authorship that he/she creates (including, without limitation, any Employee Invention), whether alone or jointly with others, within the scope of and during any employment with the Company are "works made for hire" authored and owned by the Company under the United States Copyright Act.

**(c)**    Employee agrees: (i) to promptly and fully inform the Company of any Employee Invention; (ii) to assist and maintain complete and accurate records of all Employee Inventions; (iii) to acknowledge and deliver promptly to the Company (without charge to, but at the expense of, the Company) such written instruments and to do such other acts as may be necessary in the Company's opinion to obtain, maintain and enforce patents, copyrights, mask work rights, trademarks, trade secrets, and other legal protections for any Employee Inventions.

**(d)**    Attached hereto as Exhibit A is a list describing all Inventions (if any) which were made, authored, created or developed by Employee prior to employment with the Company (collectively referred to as "Prior Inventions"), which relate to the Company's existing or proposed business and which are not assigned to the Company.  If a list is not attached as Exhibit A, Employee represents that there are no such Prior Inventions. If, in the course of employment with the Company, Employee incorporates a Prior Invention into an Invention of the Company (whether or not an Employee Invention), Employee hereby grants to the Company a nonexclusive, royalty-

free, irrevocable, perpetual, worldwide license to make, have made, modify, create derivative works of, register copyright in the name of the Company, use, and sell such Prior Invention as part of or in connection with such Invention of the Company.

**4.     Duty of Confidentiality.**

**(a)**     Employee covenants and agrees to not, at any time or in any manner, use any of the Confidential Business Information for any purpose other than as reasonably necessary in the performance of Employee's duties for the Company and for the exclusive benefit of the Company. Employee shall not at any time, both during and after employment with the Company (regardless of the manner or reason of termination or cessation of employment with the Company), or in any form or manner, either directly or indirectly, copy, disseminate, divulge, disclose, transfer or communicate any Confidential Business Information to any other employee or to any other person or entity except as reasonably necessary in the performance of Employee's duties for the Company.

**(b)**     Employee agrees that all Confidential Business Information is the sole and exclusive property of the Company. Employee further agrees that all files, documents, works, papers, electronic files and information and other materials containing any Confidential Business Information or information which Employee prepares, uses, possesses or controls that affects or relates to the business of the Company are the sole property of the Company. Employee agrees to take all steps necessary, and all steps requested by the Company, to ensure that the Confidential Business Information is kept confidential and to comply with all applicable policies and procedures of the Company regarding the use, disclosure, maintenance and security of the Confidential Business Information.

**(c)**     Upon the termination of Employee's employment with the Company (regardless of the manner or reason of termination), Employee shall immediately return to the Company all Confidential Business Information, Company assets, and other information and property obtained from or relating to the Company or to which Employee has access, in good condition, normal wear and tear excepted, and shall not retain any copies thereof, whether in hard copy or electronic form.

**5.     Non-Competition Agreement.** Employee agrees that, beginning on the Effective Date and continuing for one (1) year from the later of (i) the date Employee's employment with the Company is terminated or otherwise ceases (regardless of the manner or reason of termination or cessation) or (ii) the latest date on which Employee breaches any of the provisions of Sections 4, 5, 6, or 7 hereof (the later one-year period being referred to as the "Covenant Period"), Employee shall not, anywhere in the United States, directly or indirectly, individually or jointly, whether as an officer, director, partner, shareholder, member, owner, employer, employee, agent, independent contractor, advisor, consultant, debtor, guarantor or otherwise, engage in, have an interest or investment in, lend funds or become indebted to, be associated with, advise or assist others with, be employed by or otherwise render services to any person or entity that is engaged in or competes with the type(s) of staffing that Employee was engaged in at any time during Employee's last three (3) years of employment with the Company. The Company and Employee agree that for purposes of this Section 5, the "types" of staffing the Company engages in include, without limitation, physician staffing, nurse staffing, allied staffing and such other segment of staffing engaged in by the Company in the future. Employee further agrees and understands that regardless of the type(s) of staffing engaged in by Employee during

Employee's last three years of employment with the Company, this restriction applies to both temporary (including "locum tenens") and permanent staffing within such type(s) of staffing (e.g. Employee could not work in allied temporary staffing if Employee had worked in allied permanent staffing at any time during Employee's last three years of employment with the Company). By way of example, if Employee worked in, supported, managed or otherwise engaged in, in any capacity, physician staffing at any time during Employee's last three years of employment with the Company, Employee agrees not to work in, support, manage or otherwise engage in, in any capacity, physician staffing on a permanent or locum tenens basis during the Covenant Period. By way of further example, if Employee worked in, supported, managed or otherwise engaged in, in any capacity, physician staffing and nurse staffing at any time during Employee's last three years of employment with the Company, Employee agrees not to work in, support or manage or otherwise engage in, in any capacity, physician and nurse staffing on a permanent or temporary basis during the Covenant Period. Employee acknowledges that because of Employee's access to the Company's Confidential Business Information, and because of the nationwide nature of the Business, a violation of this covenant will cause irreparable injury to the Company. The ownership of less than two percent (2%) of a publicly-traded corporation or entity shall not be deemed, by itself, to violate the non-competition provisions of this Section 5.

6.      **Non-Solicitation of Healthcare Personnel or Clients.** Employee agrees that, during the Covenant Period, Employee shall not, in any manner, either directly or indirectly, for Employee's own behalf or for or on behalf of any other person or entity (other than the Company), solicit, recruit, offer or otherwise provide services, or attempt to solicit, recruit, offer or otherwise provide services, that are the same as or similar to the Business to any current, former or prospective Healthcare Personnel or Clients of the Company with whom Employee worked with or serviced, communicated with, had contact in any manner, or otherwise was aware of during Employee's last three (3) years of employment with the Company. Employee further agrees that, during the Covenant Period, Employee shall not, in any manner, either directly or indirectly, induce, encourage, solicit or cause, or attempt to induce, encourage, solicit or cause Healthcare Personnel or Clients to cease doing business with, or otherwise change or diminish the Healthcare Personnel or Clients' business with, the Company.

7.      **Non-Solicitation of Employees.** Employee agrees that, during the Covenant Period, Employee shall not, in any manner, either directly or indirectly, for Employee's own behalf or for or on behalf of any other person or entity (other than the Company), solicit, divert, induce or otherwise cause, attempt to cause or encourage employees or agents of the Company to terminate employment with the Company, enter into any employment, consulting or advisory arrangement or contract with or to perform any services for or on behalf of Employee or any other person or entity (other than the Company), or to enter into any kind of business, including without limitation the Business or any similar business. Employee further agrees that, during the Covenant Period, Employee shall not, in any manner, either directly or indirectly, for Employee's own behalf or for or on behalf of any other person or entity (other than the Company), hire or engage or attempt to hire or engage, in any capacity, any employee or agent of the Company. For purposes of this Section 7, "employee" or "agent" (whether in the singular or plural) shall mean and refer to any individual who was an employee or agent of the Company at the time of the attempted or actual solicitation, diversion, inducement, encouragement, hiring, engagement or similar action.

8.      **Notice to Subsequent Employer.** Employee agrees that, during the Covenant Period, Employee will provide a copy of this Agreement to any subsequent employer of Employee. Employee further agrees that the Company may provide a copy of this Agreement to

any subsequent employer of Employee and that such action by the Company shall not be used as the basis for a claim of negligent or intentional interference with contract or prospective economic advantage, breach of the covenant of good faith and fair dealing, blacklisting, or otherwise.

        **9.**    **Prior Agreements.** Employee hereby represents that Employee is not restricted by any prior agreement(s) with any other person or entity that would, in any way, conflict with or prevent the execution of the responsibilities that pertain to Employee's position with the Company. Employee shall not disclose to the Company, or use in the performance of his/her work or responsibilities for the Company, any proprietary or confidential information, trade secret, or other intellectual property of (a) Employee, (b) any former employer of Employee, or (c) any other individual or entity, unless the Company has received written authorization from Employee or such former employer or other Person and the Company has instructed Employee in writing to do so.  The provisions of this Section 9 are not intended to create any rights as an intended or third-party beneficiary for any third party.

        **10.**    **Miscellaneous.**

        **(a)**    **Acknowledgement of Restrictions.** Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions set forth herein (including without limitation, the scope, the time period of restriction and the geographical areas of restriction set forth in Sections 5, 6, and 7 hereof) are fair and reasonable and are reasonably required for the protection of the business interests and goodwill of the Company and to prevent irreparable harm to the foregoing.

        **(b)**    **Reformation; Severability.** The Company intends to restrict Employee under this Agreement only to the extent necessary for the protection of the Company's legitimate business interests.  The Company and Employee agree that the scope, duration, and geographic area provisions are reasonable.  In the event a court of competent jurisdiction concludes that any provision of this Agreement is too restrictive, such provision(s) shall nevertheless be valid and enforceable to the fullest extent permitted by such court, and such provision(s) shall be reformed to the maximum scope, time, and/or geographic limitations determined appropriate by such court. If any one or more of the terms, provisions, covenants or restrictions of this Agreement shall be determined by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

        **(c)**    **Injunctive Relief.** Employee specifically acknowledges that a breach of this Agreement by Employee (particularly with respect to the covenants and restrictions in Sections 3, 4, 5, 6, and 7) will cause the Company to suffer irreparable damage and other damages beyond those that can be calculated. Employee further agrees and acknowledges that money damages would not be a sufficient remedy for a breach of this Agreement and that the Company shall be entitled to equitable relief, including, without limitation, injunctive relief and specific performance, as a remedy for any actual or threatened breach of this Agreement (particularly with respect to the covenants and restrictions in Sections 3, 4, 5, 6, and 7).  Employee hereby expressly waives any and all right or requirements to prior notice or for security or the posting of any bond in connection with temporary injunctive relief or other such equitable or injunctive remedies on behalf of the Company. The rights and remedies provided for in this Agreement are cumulative, and such rights, remedies and equitable relief shall not be deemed to be the

exclusive remedies for a breach of this Agreement by Employee, but shall be in addition to all other remedies available at law or equity to the Company.

(d) **Assignment.** Employee shall not assign or delegate Employee's rights, duties or obligations pursuant to this Agreement to any other person. Employee acknowledges and agrees that the Company may assign any of its rights or obligations under this Agreement without the consent of Employee, including, without limitation, an assignment to any purchaser or successor of the Company.

(e) **Entire Agreement; Survival.** This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings between Employee and the Company with respect thereto. Notwithstanding the foregoing, nothing in this Agreement shall be construed as relieving Employee of the duty to comply with the Company's rules, policies, and practices.

The provisions of this Agreement shall survive the termination of this Agreement (including, without limitation, the provisions of Sections 3, 4, 5, 6 and 7), except that the Company and Employee shall have no further obligations under Section 1 hereof.

(f) **Governing Law; Venue.** Employee and the Company agree that the validity, interpretation, construction, effect, and enforcement of this Agreement shall be governed by the laws of the State of Utah, without regard to any conflict-of-law rules or principles that would require the application of the substantive law of a State other than Utah. Each party hereto (i) agrees that any legal suit, action or proceeding arising out of or relating to this Agreement shall be instituted exclusively in the courts of the State of Utah or of the United States of America located in the State of Utah, Salt Lake County; (ii) waives any objection that such party may have now or hereafter to the venue of any such suit, action or proceeding; and (iii) irrevocably consents and submits to the personal jurisdiction of the courts of the State of Utah and the United States of America located in the State of Utah, Salt Lake County, in any such suit, action or proceeding.

(g) **Litigation; Jury-Trial Waiver; Attorney's Fees and Costs.** The parties to this Agreement acknowledge and agree that any litigation to enforce or defend any rights under this Agreement, and any litigation arising out of or in connection with Employee's employment by the Company, **SHALL BE CONDUCTED BEFORE AND TRIED TO A JUDGE WITHOUT A JURY, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY WAIVING THEIR RIGHT TO TRIAL BY JURY. THIS PROVISION APPLIES TO ALL CLAIMS BY EMPLOYEE AGAINST THE COMPANY ARISING OUT OF EMPLOYEE'S EMPLOYMENT, INCLUDING BUT NOT LIMITED TO CLAIMS ARISING UNDER THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED, THE AMERICANS WITH DISABILITIES ACT, THE FAMILY AND MEDICAL LEAVE ACT, THE FAIR LABOR STANDARDS ACT, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA"), AS AMENDED, THE CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT ("COBRA"), ANY STATE OR FEDERAL "WHISTLEBLOWER" PROTECTION LAWS, ANY STATE OR LOCAL CIVIL RIGHTS OR EMPLOYMENT DISCRIMINATION LAWS, ANY CLAIMS OR CAUSES OF ACTION BASED ON TORT OR CONTRACT THEORIES, AND ANY OTHER CLAIM OR CAUSES OF ACTION ARISING UNDER FEDERAL, STATE OR LOCAL**

**STATUTORY OR COMMON LAW.**

In any dispute under this Agreement, each party agrees to pay for its own direct, indirect or incidental expenses incurred, including, but not limited to, its own attorney's fees, court costs and other expenses incurred throughout all negotiations, trials or appeals undertaken in order to enforce its rights under this Agreement, despite any statutory or case law to the contrary.

**(h)    Waiver; Amendment.** No failure or delay by either party in exercising any right, power, privilege or restriction hereunder shall operate as a waiver thereof, nor shall any single or partial exercise or wavier thereof preclude any other or further exercise thereof or the exercise of any other right, power, privilege or restriction hereunder. This Agreement may be amended or modified only by written agreement executed by all of the parties hereto.

**(i)    Company Affiliates.** Employee understands and agrees that this Agreement is executed by the Company on its own behalf and on behalf of each of its subsidiaries and affiliates, including the particular entity by whom Employee is employed, and that Employee's obligations under this Agreement shall apply equally to each of the Company and its subsidiaries and affiliates. In the event that Employee is transferred or assigned to or otherwise becomes employed by any other of the Company's subsidiaries or affiliates, Employee's obligations under this Agreement shall continue to apply equally to each of such subsidiary or affiliate and to the Company and its other subsidiaries and affiliates and any of such parties may enforce this Agreement in its own name as if it were a party to this Agreement.

**(j)    Notices.** All notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given only upon hand delivery thereof or upon the fifth (5th) business day after mailing by United States registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

> To the Company: Attn: Director of Human Resources
>
> 6440 South Millrock Drive, Suite #175
>
> Salt Lake City, Utah 84121

> To Employee:    The last known address the Company has on file for Employee
>
> 11313 Coral Reef Drive
> Boca Raton, FL 33498

or to such other address or such other person as any party shall designate, in writing, to the other for such purposes and in the manner hereinabove set forth.

**(k)    Further Assurances.** The parties hereto will execute and deliver such further instruments and do such further acts and things as may be reasonably required to carry out the intent and purposes of this Agreement.

**(l)    Voluntary Nature of the Agreement.** Employee acknowledges and agrees that Employee has carefully read and understands this Agreement, has had the opportunity to consult with counsel of Employee's own choosing about this Agreement, and that Employee is entering this Agreement knowingly and voluntarily.

**(m)    Headings; Singular/Plural.** The headings used in this Agreement are for convenience only and are not intended to be used in its construction or interpretation. In

interpreting this Agreement, the singular shall include the plural, and the plural the singular, as appropriate to the content and context of the provision at issue.

**EMPLOYEE IS AN EMPLOYEE AT WILL AND MAY RESIGN OR BE TERMINATED BY THE COMPANY, AT EITHER PARTY'S SOLE DISCRETION, AT ANY TIME, WITH OR WITHOUT NOTICE, WITHOUT NEED TO SHOW REASON OR CAUSE, SUBJECT TO THOSE OBLIGATIONS HEREUNDER THAT SURVIVE TERMINATION OF THIS AGREEMENT.   EMPLOYEE AGREES THAT (A) NO EMPLOYEE HANDBOOK OR OTHER POLICY OR PROCEDURE FOLLOWED BY THE COMPANY OR (B) NO WRITTEN OR ORAL STATEMENT MADE BY ANY OFFICER, DIRECTOR, MANAGER, SUPERVISOR, OR CO-WORKER OF THE COMPANY CAN MODIFY THE AT-WILL NATURE OF EMPLOYEE'S EMPLOYMENT WITH THE COMPANY AS SET FORTH IN THIS AGREEMENT.**

**IN WITNESS WHEREOF,** the undersigned parties have executed the foregoing Employment Agreement Including Confidentiality, Non-Competition and Non-Solicitation Provisions as of the date first above written.

EMPLOYEE                                    COMPANY


_Rachel Shafer_                             _Ann Sub_
Signature of Employee                       Signature

_Rachel Shafer_                             _Mgn. Administra_
Name of Employee (Typed or Printed)         Title